UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKI RUN MARINA, LLC, | No. 2:18-cv-02271-KJM-DB |
| Plaintiff, | |
| v. | ORDER |
| ARAMARK SPORTS AND ENTERTAINMENT SERVICES, LLC, | |
| Defendants. | |

Defendant moves to dismiss plaintiff's sole claim for breach of contract. Having reviewed the complaint and the parties' briefing, the court GRANTS in part and DENIES in part the motion.

I. THE WEATHER CONDITIONS EXCEPTION

Plaintiff alleges defendant breached the parties' commercial lease by failing to operate a vessel, the "Tahoe Queen," for excursions on Lake Tahoe at least 275 days per year in 2015 and 2016, and thus owes plaintiff $275,000. Compl., ECF No. 1-1 ¶¶ 5-14; *see* Agreement, Compl. Ex. A, ECF No. 1-1, § 3.B (defendant owes plaintiff $500 "for each day [of non-operation] fewer than 275. However, if such shortfall is caused by weather conditions or if the Tahoe Queen is taken out of service for remodeling, such penalty will not be assessed").

Defendant moves to dismiss, arguing "plaintiff must plead sufficient non-conclusory facts to establish more than a 'mere possibility' that the shortfall of days during which

1  the Tahoe Queen did not run was due to a factor other than weather." Mot., ECF No. 7, at 6

2  (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546

3  (2007)). Defendant further contends that plaintiff is unable to cure this purported pleading

4  deficiency because judicially noticeable facts establish that Lake Tahoe experienced drought

5  conditions and low water levels in 2015 and 2016 and those drought conditions were the direct

6  and sole cause of defendant's non-operation of the Tahoe Queen throughout that period. *Id.* at

7  6-7; *see* RJN, ECF No. 9.

8          The court is unpersuaded. Notably, despite arguing plaintiff must allege facts

9  showing defendant's non-operation was not caused by weather, defendant makes no such

10 argument as to the contract's exception for "remodeling." *See* Agreement § 3.B (providing daily

11 fee does not apply when a "shortfall is caused by weather conditions or if the Tahoe Queen is

12 taken out of service for remodeling"). It is unclear why plaintiff must affirmatively allege one

13 contractual exception does not apply but may remain silent as to the other. Moreover, defendant

14 provides no authority requiring a plaintiff to affirmatively allege that a defendant lacks a plausible

15 excuse for non-performance or otherwise provide detailed allegations establishing no contractual

16 exception applies. Indeed, to the extent the weather provision operates as an affirmative defense,

17 authority suggests plaintiff is not required to plead away that defense. *See Merced Irr. Dist. v.*

18 *Cty. of Mariposa*, 941 F. Supp. 2d 1237, 1246 (E.D. Cal. 2013) ("While a plaintiff has a duty to

19 plead its own performance or excuse for the failure to perform, it does not have to prove or plead

20 how the defendant's excuse for non-performance was not justified.") (citing *Transmarine Corp. v.*

21 *R.W. Kinney Co.*, 123 Cal. App. 411, 421 (1932) ("It was unnecessary for the plaintiff to allege or

22 prove that the failure to deliver the goods at destination was due to one of the excepted

23 clauses.")). In sum, the court finds plaintiff's allegations provide defendant with sufficient notice

24 of the allegations against it, satisfying the pleading standard.

25         Further, although defendant contends judicially noticeable facts conclusively

26 establish that weather conditions caused the non-operation at issue, this argument is unavailing.

27 Defendant's counsel appeared to concede as much at hearing, leaving the court puzzled as to why

28 defendant raised the argument at all. In any event, "[t]he court may judicially notice a fact that is

not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). Defendant's Exhibits 3 through 6, reports from government and education institutions indicating Lake Tahoe experienced low water levels in 2015 and 2016, contain facts subject to judicial notice. *See id.*; ECF No. 9-1 – 9-4. But those judicially noticeable facts establish only that, generally speaking, the Lake Tahoe area experienced drought conditions and Lake Tahoe itself had low water levels during the relevant period. *See, e.g.*, ECF No. 9-2 (University of California, Davis, Tahoe Environmental Research Center "State of the Lake Report 2016" identifying historical Lake Tahoe surface level and discussing low levels in 2015). These reports do not establish whether vessels the size of the Tahoe Queen were able to operate in Lake Tahoe throughout the entirety of the 2015 through 2016 period and therefore do not establish that defendant's alleged non-operation here was caused exclusively by weather conditions.

Defendant's Exhibits 7 through 11, which are news articles commenting on Lake Tahoe's water levels, two of which report the Tahoe Queen was non-operational due to low water levels in addition to other causes, contain observations that are inconclusive hearsay, subject to reasonable dispute and not judicially noticeable. *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (noting courts generally may not take judicial notice of "whether the contents of [news] articles were in fact true") (citation and internal quotation marks omitted). Two articles specifically discussing the Tahoe Queen's non-operation rely exclusively on defendant's own representations for the proposition that low-water levels caused the non-operation. ECF Nos. 9-5, 9-6. Further, those articles note that before low-water levels prevented the Tahoe Queen from operating, it was out of operation due to the United States Coast Guard's no-sail order arising from the Tahoe Queen's broken hydraulic sprocket, a fact defendant makes no attempt to explain. ECF Nos. 9-5, 9-6. When pressed at hearing, defendant's counsel had no reasonable argument for treating the content of these sources as indisputable and, more confoundingly, defendant's counsel could not explain how these facts taken as true would establish the Tahoe Queen's non-operation was due solely to weather. In

short, defendant has not shown that undisputed facts establish any non-operation of the Tahoe Queen was caused by weather conditions.

Plaintiff's allegations as to defendant's breach suffice and defendant has not shown that undisputed facts lead inevitably to the conclusion that defendant's non-operation was caused by weather conditions. The motion is DENIED.

## II. FIVE PERCENT LATE FEE

Plaintiff alleges the parties' contract requires defendant to pay a late fee of 5 percent of the amount owed for non-operation of the Tahoe Queen. Compl. ¶ 15; *see* Agreement § 5 (defendant will pay 5% late fee if "any payment of rent, or additional rent, is not made within 5 days of its due date or five days after receipt . . . , whichever is later"). Defendant argues the late fee is contained within a contract provision entitled "RENT," and by its terms applies exclusively to defendant's rent payments. Mot. at 7-8. Plaintiff's opposition did not acknowledge this argument and plaintiff confirmed at hearing that it has abandoned this claim. Accordingly, insofar as defendant moves to dismiss plaintiff's claim to a 5 percent contractual late fee, that motion is GRANTED without leave to amend.

## III. OTHER ISSUES

As discussed at hearing, plaintiff shall correct its erroneous naming of the defendant and attach a clearer copy of the parties' agreement in an amended complaint.

## IV. CONCLUSION

As explained above, defendant's motion to dismiss is DENIED in part and GRANTED in part. Plaintiff shall file an amended complaint consistent with this order within 14 days. Defendant shall file an answer 21 days thereafter.

IT IS SO ORDERED.

DATED: November 27, 2018.

_____
UNITED STATES DISTRICT JUDGE

4